20-MJ-6762-MPK

## AFFIDAVIT OF SPECIAL AGENT TIMOTHY TABER

I, Special Agent Timothy Taber, being duly sworn, depose and state as follows:

### INTRODUCTION

1. I am a Special Agent ("SA") with the United States Department of Homeland Security, Homeland Security Investigations ("HSI") and have been so since May 2018. I have received formal training in conducting criminal investigations at the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to becoming a SA with HSI, I was an Intelligence Analyst with the Federal Bureau of Investigation for approximately ten years. In 2005, I graduated from Northeastern University with a bachelor's degree in criminal justice. In 2006, I graduated from Suffolk University with a master's degree in criminal justice. I am currently assigned to HSI Boston, Massachusetts Document and Benefit Fraud Task Force ("DBFTF"), which is comprised of law enforcement agents and officers from federal, state, and local agencies. As part of the DBFTF, I am responsible for conducting investigations involving but not limited to the manufacturing, counterfeiting, alteration, sale, and use of identity documents and other fraudulent documents to evade immigration laws or for other criminal activity. Due to my training and experience, as well as from interactions with other law enforcement officers, I am familiar with the methods, routines, and practices of document counterfeiters, vendors, and persons who fraudulently obtain or assume false identities.

2. The DBFTF is currently investigating United States citizens who are believed to have obtained stolen identities of other United States citizens from Puerto Rico. Many of these individuals used the stolen identities to open bank accounts and/or credit cards to fraudulently purchase, register, and/or export vehicles as part of a multi-state scheme involving financial

fraud, auto theft, and the exportation of stolen goods.

3. I am submitting this affidavit in support of an application for an Order, pursuant to Rule 41(e)(2)(C) and Title 18, United States Code, Section 3117, authorizing agents of HSI to surreptitiously install, monitor, repair, replace, and use a real-time Global Positioning System ("GPS") mobile tracking device for 45 days on the following motor vehicle located in the District of Massachusetts (hereinafter, the "Subject Vehicle") for the purpose of monitoring and recording data regarding the movement of this motor vehicle both inside and outside the District of Massachusetts:

    a.    A GRAY 2020 CADILLAC XT5, NEW YORK REGISTRATION JKE3715, BEARING VIN 1GYKNCRS0LZ125753.

4. I submit this affidavit in furtherance of an ongoing criminal investigation into Ramon CRUZ (DOB xx-xx-1996) and other co-conspirators (hereinafter, the "Targets") concerning violations of federal law, including 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), 18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud), 18 U.S.C. § 1028A (Aggravated Identity Theft), and/or 42 U.S.C. § 408 (Misuse of a Social Security Number) (collectively, the "Target Offenses").

5. As further described below, there is probable cause to believe that: (a) CRUZ has committed, is committing, and will continue to commit violations of one or more criminal statutes cited above; (b) the Subject Vehicle is being and will be used to facilitate the commission of these offenses; and (c) the data obtained from the GPS device about the geographic location of the Subject Vehicle will constitute and/or will lead to evidence, fruits, and instrumentalities of the aforementioned crimes, as well as to the identification of the individuals who are committing those and related crimes.

6. As a result of my personal participation in the investigation, review of reports

submitted by other law enforcement personnel, and my consultations with other law enforcement officers, I am familiar with this investigation. I submit this affidavit for the limited purpose of establishing probable cause for the requested warrant. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation.

## PROBABLE CAUSE

### Background of Investigation

7. Since approximately January 2019, HSI special agents have been investigating a scheme involving the use of stolen identities to fraudulently open bank accounts and credit cards and purchase vehicles, many of which vehicles are then exported out of the United States. More specifically, the investigation has revealed a number of individuals using the stolen identities of United States citizens from Puerto Rico to fraudulently finance late-model vehicles from dealerships in Massachusetts with zero dollars down. At the dealerships, the individuals provide a variety of common identification and credit-related documents, including Puerto Rico driver's licenses and Social Security cards as proof of identification. The perpetrators of this fraudulent scheme do not make down payments or subsequent payments on the vehicles, resulting in the dealership or relevant lending financial institution taking a total loss for the vehicles. The individuals have also been successful in opening bank accounts in the same stolen identities prior to fraudulently purchasing the vehicles. Individuals perpetrating the scheme max out associated credit cards within days or weeks and rarely make any payments on the accounts. On October 6, 2020, Alvin RIVERA and five co-defendants were indicted in this District for conspiracy to commit wire fraud, wire fraud, aggravated identity theft, and misuse of a social security number in connection with this scheme, in *United States v. Alvin Rivera et al.,* 20-CR-10228-PBS. As

described further below, the investigation has uncovered evidence that CRUZ is also involved in a conspiracy with RIVERA and others involving aggravated identity theft and bank and wire fraud.

8. Based on the information set forth below, as well as my training and experience, I believe that CRUZ and others have been and/or are currently using the Subject Vehicle in furtherance of the Target Offenses and that there is probable cause to believe that the specific location from a GPS tracker on the Subject Vehicle will lead to evidence of the Target Offenses, as well as potential additional criminal conduct.

**Probable Cause to Believe that Cruz is Committing the Target Offenses**

9. HSI's investigation to date has yielded substantial evidence that the Targets are engaged in criminal conduct, including violations of the Target Offenses. More specifically, on or about September 9, 2020, I obtained a search warrant for RIVERA's residence at 15 Brockton Avenue, Haverhill, Massachusetts. *See* 20-MJ-6560-MPK. DBFTF agents and officers executed the search warrant on September 10, 2020 and seized numerous fraudulent documents, stolen identity profiles with related financial information, approximately fifty cell phones, numerous fraudulent out-of-state licenses, fraudulent credit/debit cards and fraudulent social security cards. One of the cell phones seized by agents was powered on at the time of the warrant and is believed to be RIVERA's personal cell phone. During a cursory review of the phone, agents discovered mugshot-style photographs stored within. One of the mugshot style photographs was of an individual who agents identified as CRUZ.

10. Based on my training and experience, as well as my familiarity with this investigation, I am aware that RIVERA stored mugshot-style photographs in his phones so that

he could make or otherwise procure false identification documents for co-conspirators to use in opening bank accounts, obtaining credit cards, and obtaining fraudulent loans.   For example, a search of a prior phone owned by RIVERA, also pursuant to a search warrant, revealed numerous mugshot-style photos and photos of fraudulent identity cards using the mugshot-style photos, that were ultimately used in fraudulent transactions by co-conspirators that were also arrested on September 10, 2020.

11.   On or about October 14, 2020, HSI Special Agents conducted a forensic analysis of RIVERA's cellphone, which was seized from his residence on September 10, 2020, and discovered a WhatsApp conversation between RIVERA and CRUZ.   On September 3, 2020 RIVERA messaged CRUZ, "Yo ur pro [profile] address reflected for RICARDO so now we can go out n play at the retail stores. Want to apply at a few stores today n see what we get."

12.   On September 6, 2020, RIVERA sent the following information to CRUZ through WhatsApp:

> R.J.T.L.,[1] 421 Litchfield St. Apt 1, Torrington, CT 06790-6660
> Been in residence 5Y 7M
> Monthly rent: $980
> DOB: xx/xx/1980    AGE: 40
> SSN: xxx-xx-1970
> Phone: 860-278-9348
> Email: TXXXXXroofingcompany80@gmail.com
> Mailing Address: R.J.T.L., 33 Dixwell Ave, Suite #168, New Haven, CT 06511
>
> Business Name & Address: TXXXXX Roofing Company, 421 Litchfield St, Torrington, CT 06790
> Been in Business: 5Y 6M
> Annual Income: $203,000

---

1 The identity of the victim, R.J.T.L., is known to the government.   These initials represent the victim's first name, middle name, paternal last name and maternal last name. To protect the victim's privacy, the initials "R.J.T.L.," and "R.T.L." are used in this affidavit to reflect the variations of the victim's full name that were used by RAMON CRUZ.   Likewise, the victim's last name has been redacted from the email and business name listed in the profile. The victim's first name (Ricardo) is included occasionally where necessary to convey meaning.

5

       Monthly Income: $16,916

       Chase Bank Personal Checking Account:
       Date Opened: July 27, 2020
       Opening Deposit: $25
       Online Banking Username: Ricardoxxxx
       Password: xxxxxxxxx
       Account#: 632xxxxxx
       Debit Card #: xxxx-xxxx-xxxx-3609

       *Palma 777[2]

Based on my familiarity with this investigation, I know that RIVERA would commonly message "profiles" containing stolen identity information and additional made-up biographical details to co-conspirators so they could "study" the stolen identity prior to using it. As described below, I believe that CRUZ used the R.J.T.L. identity to, among other things, open bank accounts and receive funds obtained through a conspiracy with RIVERA and Neida LOPEZ.

      13. In November 2020, agents received ███████████████ from Chase Bank on account# 632xxxxxx in the name of R.J.T.L and with social security number xxx-xx-1970, the account referenced in paragraph 12. Financial statements indicate the account was opened on July 27, 2020 in Hartford, CT with a deposit of $25. The account holder listed 421 Litchfield St Apt 1 Torrington, CT as his home address and (860) 278-9348 as his phone number – the same details as were listed in the fraudulent R.J.T.L. profile that RIVERA sent to CRUZ. Chase documents show the account was opened with Pennsylvania driver's license # 4000632 as the primary identification type and social security card xxx-xx-1970 as a secondary identification type. Transaction details show that on August 18, 2020, person-to-person payments of $4,000 and $500 were made to the R.J.T.L. Chase account from "K.N."[3] via Stride Bank. Most of

---

2  The investigation has revealed that "Palma" is a nickname or alias that co-conspirators use for CRUZ.
3  The identity of the victim, K.N., is known to the government. These initials represent the victim's first name and

this money was withdrawn from the Chase account the same day or the next day; on August 18, 2020, $503 was withdrawn, and on August 19, 2020 $3,900 was withdrawn from the Chase account.

14. During the search of RIVERA's residence at 15 Brockton Ave on September 10, 2020, agents located and seized Chime[4] Debit Card xxxx-xxxx-xxxx-5252 in the name of K.N. Agents subsequently learned that an Economic Injury Disaster Loan from the Small Business Administration totaling $44,000 had been deposited onto the card on or about August 4, 2020. ███████████████████████████████████████ agents learned the card had a balance of 87 cents as of August 31, 2020; most of the funds had been expended on Apple iPhones in Salem, New Hampshire.

15. Also at RIVERA's residence, agents located a fraudulent Georgia driver's license in the name of K.N., which depicted Neida LOPEZ.  LOPEZ was arrested, as part of this investigation, on September 10, 2020 and indicted on charges of conspiracy to commit wire fraud and aggravated identity theft on September 29, 2020, in *United States v. Neida Lopez,* 20-CR-40035.

16. Further review of RIVERA's cellphone revealed a WhatsApp conversation between RIVERA and "MOM" (believed to be LOPEZ, based on the context set forth below), which took place between approximately 4:19 p.m. and 4:33 p.m. on August 18, 2020, the same day the person-to-person payment was made from K.N.'s Chime Card to the R.J.T.L. Chase account. Below is a summary of the conversation:

---

last name.
4 According to its web site, Chime is a financial technology company.  It connects users to bank services provided by The Bancorp Bank or Stride Bank, N.A.

| MOM | Yo it's the same guy |
| --- | --- |
| RIVERA | Fuck |
| MOM | And they took the ID |
| MOM | To a banker in the back |
| MOM | I'm gonna see what I do. If I pull this off u sooo owe me |
| RIVERA | U should've told them why they taking your ID |
| MOM | Palma spoke not me |
| RIVERA | WTF u know we never allow that |
| RIVERA | Try to show the girl your chime card n the chime account on your phone showing u linked the card to your chime to transfer the money |
| RIVERA | That u only there to clarify the money transfer from your chime account to Mr. Ricardo's Chase account n that's all |

17. Based on my training and experience, as well as my knowledge of this investigation, I believe that this conversation occurred while LOPEZ (using K.N.'s identity) was at a bank with CRUZ (using R.J.T.L.'s identity). LOPEZ was first informing RIVERA that an employee was working with whom she had used another stolen identity and she was concerned he would recognize her. She then informed RIVERA that bank employees took the identity document she and "Palma" (CRUZ) had presented. RIVERA then becomes upset, saying "they" should never allow bank employees to physically take an identity document and she should have asked why they needed her identity document. LOPEZ informed RIVERA that "Palma" (CRUZ), was doing all the talking. RIVERA suggested that LOPEZ tell bank employees that she was trying to transfer money from her Chime account to "Mr. Ricardo's

Chase Account."

18. Bank records show the transfer was successful, as two person-to-person payments were conducted on August 18, 2020 from the K.N. Chime card (i.e., the associated Stride Bank account) to the R.J.T.L. Chase account. I believe that LOPEZ and CRUZ were representing themselves to be K.N. and R.J.T.L. and were attempting to transfer funds from one fraudulent account to another under the direction of RIVERA and in furtherance of their conspiracy.

19. Additionally, in RIVERA's cell phone that was seized on September 10, 2020, agents located another messaging conversation that RIVERA engaged in on August 18, 2020, this time with "$ RICARDO $" at 860-278-9348, which is the same phone number associated with the R.J.T.L. profile that RIVERA messaged CRUZ. At approximately 1:56 p.m., $ RICARDO $ messaged RIVERA, "I'm next up in the teller," to which RIVERA responded, "the balance is there, $4,520." RIVERA then sent a series of messages providing an explanation for $ RICARDO $ to provide to the bank teller about why he was withdrawing the money and where the money came from. RIVERA told $ RICARDO $ to explain the money was "a first and last security payment for an apartment you are renting to K.N." He told $ RICARDO $ that if they called K.N., RIVERA had the phone and would answer like he was her husband. RIVERA and $ RICARDO $ then conversed for approximately 20 minutes about $ RICARDO $ having issues withdrawing the money. The conversation then picked up approximately two hours later, when $ RICARDO $ appeared to be attempting to withdraw money yet again, when he messaged to RIVERA, "If they try to scan them ID's its gonna be problematic." At approximately 5:29 p.m., $ RICARDO $ messaged, "They trynna verify signatures" to which RIVERA messaged back, "WTF" and "Sign how u always sign bro."

**Probable Cause to Believe That the Subject Vehicle's Location Will Constitute and Lead to Evidence of CRUZ's Criminal Activity**

20. On November 5, 2020, agents received information from Hertz that the Subject Vehicle was rented by R.T.L. of 421 Litchfield, Torrington, Connecticut on September 10, 2020, the date that 8 individuals connected to this investigation were arrested. The individual purporting to be R.T.L. paid with Chase Visa card xxxx-xxxx-xxxx-3609 (the account discussed in paragraph 12) and provided 860-278-9348 (the number associated with the R.J.T.L. "profile" discussed in paragraph 12, and with $ RICARDO $ as discussed in paragraph 19) as his phone number. He was supposed to return the vehicle on October 6, 2020. Hertz informed agents that the vehicle was not returned, payment was overdue and an attempt at payment was conducted on November 5, 2020, which was returned as denied. Hertz also suspected that the global positioning system ("GPS") device on the Subject Vehicle had been tampered with. As of December 9, 2020, the Subject Vehicle still had not been returned to Hertz.

21. On December 1, 2020, SA Jacqleen Cunningham, with whom I am working on this investigation, obtained a search warrant for location information for a mobile phone assigned number 978-305-7514 ("Target Mobile Phone"), which was believed to be used by CRUZ. *See* 20-MJ-6761-MPK. On December 2, 2020, at approximately 10:30 am, DBFTF agents and Methuen police, initiated surveillance at 66 Pleasant Street, Methuen, MA ("Subject Address"), the suspected residence of CRUZ. During that time, location information placed the Target Mobile Phone within an area that included the location of the Subject Address. At approximately 1:00 pm, DBFTF agents observed CRUZ exit the Subject Address and depart in the Subject Vehicle as the sole occupant. Within minutes, CRUZ, while driving the Subject Vehicle, was stopped by Methuen police for driving over the speed limit. CRUZ provided

police with a MA driver's license bearing number Sxxxx1303 and a United States Army photo ID in the name of CRUZ. DBFTF agents attempted to follow the Subject Vehicle after the traffic stop but quickly lost visual. At approximately 1:20 pm, location information placed the Target Mobile Phone within an area that included Choice Fitness, a gym in Methuen, MA that CRUZ is known to use. At approximately 1:30 pm, DBFTF agents located the Subject Vehicle in the parking lot of Choice Fitness. Based on the above information, agents confirmed that CRUZ is in fact the user of the Target Mobile Phone and the Primary driver of the Subject Vehicle. However, Global Positioning System (GPS) coordinates provided by the location information warrant are not specific enough to determine CRUZ's exact location; rather, they typically identify a 3,035 meter (1.8 mile) radius in which CRUZ is located, often hampering law enforcement's ability to precisely locate him absent additional information.

[redacted]

23. Based on the above facts, and my training and experience, I believe CRUZ is the person who fraudulently misrepresented himself as R.J.T.L. to Chase Bank and Hertz, and that he is the user of the Subject Vehicle. I believe that he rented the Subject Vehicle on September 10 out of concern that law enforcement was following the vehicle he was using previously, and that his method of driving at excessive speeds (described in more detail in the affidavit in support of the search warrant in 20-MJ-6761-MPK) is intended to evade surveillance. This behavior leads me to believe that CRUZ is still engaged in conduct in furtherance of the conspiracy described above.

24. I believe that authorization to install a GPS device on the Subject Vehicle will allow agents to more definitively identify the Subject Vehicle's – and therefore CRUZ's – location, and gather evidence of whether the Subject Vehicle to determine if it is being utilized to commit the Target Offenses.

25. I also know that targets of this investigation commonly travel with and conduct fraud with co-conspirators, with one individual acting as a "lookout" while the other attempts a transaction; it appears that LOPEZ and CRUZ operated in this manner before LOPEZ's arrest. Agents expect that obtaining the location of the Subject Vehicle will help law enforcement to identify additional co-conspirators working with CRUZ.

26. Finally, information regarding the location of the Subject Vehicle is likely to assist investigators in locating CRUZ in order to effectuate an arrest for the Target Offenses, at the appropriate time.

27. Based on the foregoing, I believe that there is probable cause to believe that information about the Subject Vehicle's location and movement will lead to, among other things,

the identification of physical locations at which criminal activity is being conducted, where evidence of criminal conduct is being stored, the identification of criminal associates of CRUZ, and the location of CRUZ.

## AUTHORIZATION REQUEST

28. WHEREFORE, the United States requests that the Court issue a warrant authorizing members of HSI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device in or on the Subject Vehicle within the District of Massachusetts within 10 calendar days of the warrant's issuance and to repair, replace, maintain and remove said tracking device from the Subject Vehicle after the use of the tracking device has ended; to move the Subject Vehicle to effect the tracking device's installation, repair, replacement, and removal; and to monitor the tracking device for a period of 45 days following the warrant's issuance. To ensure the safety of the executing officer and to avoid premature disclosure of the investigation, the United States further requests the Court authorize installation, replacement, maintenance, and removal of the tracking device during both daytime and nighttime hours.

29. Because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation, the United States also requests that the warrant delay notification of the execution of the warrant for a period not to exceed 30 days after the end of the authorized period of tracking (including any extensions thereof), in accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3).

## CONCLUSION

30. Wherefore, I submit that there is probable cause to believe that Targets have committed, are committing, and will continue to commit the Target Offenses cited above; (b) the Subject Vehicle is being used to facilitate ongoing criminal activities, including some of the Target Offenses, in the District of Massachusetts; and (c) the data obtained from the GPS device about the geographic location of the Subject Vehicle will constitute and/or will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

Sworn to under the pains and penalties of perjury.

/s/ Timothy Taber
_____
TIMOTHY TABER
Homeland Security Investigations

Subscribed and sworn to via telephone in accordance with Fed. R. Crim. P. 4.1 on December 10, 2020.

_____
HON. M. PAGE KELLEY
CHIEF UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS